**Daniel Berke** (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BILLY FIELDS,** | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **DAN'S SUPREME SUPER MARKETS, INC., RIVERDALE CENTER NY LLC,** | **CASE NO.: 24-cv-5501** |
| Defendants. | **JURY DEMANDED** |

## CIVIL COMPLAINT

BILLY FIELDS (the "Plaintiff"), as and for his complaint against DAN'S SUPREME SUPER MARKETS, INC. and RIVERDALE CENTER NY LLC (the "Defendants"), respectfully brings before the Court the below allegations.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the place of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants.

2. Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3. Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district.

7.  Venue is also proper in this district because Defendants' property, the public accommodation, which is the subject of this action, is both located in, and does business within, this judicial district.

## PARTIES

8.  Plaintiff is, and at all times material to this litigation has been, a resident of New York County, New York.

9.  Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

10. Plaintiff's complaint stems from the discrimination he experienced in the parking lot of the supermarket Key Food, where he had difficulties maneuvering his wheelchair due to the architectural barriers, which were steep access aisle and accessible space.

11. All references to "Key Food" in this complaint are made regarding the supermarket Key Food, and the building in which it is located, 540 West 235th Street, Riverdale, NY 10463.

12. All references to the parking lot (the "Parking Lot") in this Complaint are made regarding the parking lot adjacent to Key Food, 540 West 235th Street, Riverdale, NY 10463.

13. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that RIVERDALE CENTER NY LLC is the owner of the real property identified on the NYC Tax Map of the Bronx County as Block 5786, Lot 204 (the "Commercial Lot"), located at 540 West 235th Street, Riverdale, NY 10463, in the Bronx County.

14. Both Key Food and the Parking Lot are located on the Commercial Lot, at 540 West 235th Street, Riverdale, NY 10463.

15. Defendant DAN'S SUPREME SUPER MARKETS, INC. leases the building, in which Key Food is located, from the owner of that building, Defendant RIVERDALE CENTER NY LLC.

16. After January 26, 1992, Defendant DAN'S SUPREME SUPER MARKETS, INC. controlled Key Food.

17. After January 26, 1992, Defendant DAN'S SUPREME SUPER MARKETS, INC. managed Key Food.

18. After January 26, 1992, Defendant DAN'S SUPREME SUPER MARKETS, INC. maintained Key Food.

19. Defendant DAN'S SUPREME SUPER MARKETS, INC. designed Key Food.

20. Defendant DAN'S SUPREME SUPER MARKETS, INC. built Key Food.

21. Defendant DAN'S SUPREME SUPER MARKETS, INC. constructed Key Food.

22. Defendant DAN'S SUPREME SUPER MARKETS, INC. erected Key Food.

23. After January 26, 1992, Defendant DAN'S SUPREME SUPER MARKETS, INC. altered Key Food.

24. Since January 26, 1992, Defendant DAN'S SUPREME SUPER MARKETS, INC. operates Key Food.

25. Since January 26, 1992, and at all relevant times, Defendant DAN'S SUPREME SUPER MARKETS, INC. operated Key Food.

26. Defendant DAN'S SUPREME SUPER MARKETS, INC. has control over the Parking Lot adjacent to Key Food.

27. Defendant DAN'S SUPREME SUPER MARKETS, INC. manages the Parking Lot adjacent to Key Food.

28. Defendant DAN'S SUPREME SUPER MARKETS, INC. maintains the Parking Lot adjacent to Key Food.

29. Defendant DAN'S SUPREME SUPER MARKETS, INC. designed the Parking Lot adjacent to Key Food.

30. Defendant DAN'S SUPREME SUPER MARKETS, INC. built the Parking Lot adjacent to Key Food.

31. Defendant DAN'S SUPREME SUPER MARKETS, INC. constructed the Parking Lot adjacent to Key Food.

32. Defendant DAN'S SUPREME SUPER MARKETS, INC. erected the Parking Lot adjacent to Key Food.

33. Defendant DAN'S SUPREME SUPER MARKETS, INC. altered the Parking Lot adjacent to Key Food.

34. Defendant DAN'S SUPREME SUPER MARKETS, INC. operates the Parking Lot adjacent to Key Food.

35. Defendant DAN'S SUPREME SUPER MARKETS, INC., at all relevant times, operated the Parking Lot adjacent to Key Food.

36. Defendant RIVERDALE CENTER NY LLC owns the Commercial Lot.

37. Since January 26, 1992, Defendant RIVERDALE CENTER NY LLC controlled the Parking Lot.

38. After January 26, 1992, Defendant RIVERDALE CENTER NY LLC managed the Parking Lot.

39. After January 26, 1992, Defendant RIVERDALE CENTER NY LLC maintained the Parking Lot.

40. Defendant RIVERDALE CENTER NY LLC designed the Parking Lot.

41. Defendant RIVERDALE CENTER NY LLC built the Parking Lot.

42. Defendant RIVERDALE CENTER NY LLC constructed the Parking Lot.

43. After January 26, 1992, Defendant RIVERDALE CENTER NY LLC altered the Parking Lot.

44. After January 26, 1992, Defendant RIVERDALE CENTER NY LLC operated the Parking Lot.

45. Defendant RIVERDALE CENTER NY LLC at all relevant times operated the Parking Lot.

46. Key Food is in a building erected on the Commercial Lot.

47. Key Food is in a building constructed on the Commercial Lot.

48. Key Food is in a building built on the Commercial Lot.

49. Customers of Key Food are allowed to park in the Parking Lot only while they are patronizing Key Food.

50. The Parking Lot exists for the convenience of Key Food's customers.

51. Key Food's customers park their vehicles in the Parking Lot.

52. DAN'S SUPREME SUPER MARKETS, INC. operates the supermarket Key Food in the building owned by Defendant RIVERDALE CENTER NY LLC at 540 West 235th Street, Bronx, NY.

53. Defendant RIVERDALE CENTER NY LLC leases the Commercial Lot to Defendant DAN'S SUPREME SUPER MARKETS, INC.

54. Defendant DAN'S SUPREME SUPER MARKETS, INC. leases the Commercial Lot from Defendant RIVERDALE CENTER NY LLC.

55. Key Food and the Parking Lot are the subject of this lawsuit and are hereinafter referred to both by their name and as the "Subject Facility."

56. DAN'S SUPREME SUPER MARKETS, INC. is an American for-profit corporation organized under the laws of New York State.

57. DAN'S SUPREME SUPER MARKETS, INC. is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

58. NYS DOS maintains entity information for DAN'S SUPREME SUPER MARKETS, INC. in its Corporation and Business Entity Database ("CBED").

59. NYS DOS CBED maintains a corporate record for DAN'S SUPREME SUPER MARKETS, INC.

60. NYS DOS CBED's corporate record for DAN'S SUPREME SUPER MARKETS, INC. states that its chief executive officer's name and address are the following: Richard Grobman, 474 Fulton Avenue, Hempstead, NY 11550.

61. NYS DOS CBED's corporate record for DAN'S SUPREME SUPER MARKETS, INC. states that its principal executive office address is 474 Fulton Avenue, Hempstead, NY 11550.

62. NYS DOS CBED's corporate record for DAN'S SUPREME SUPER MARKETS, INC. contains no information regarding its registered agent.

63. DAN'S SUPREME SUPER MARKETS, INC. does not have a registered agent.

64. The name and address of DAN'S SUPREME SUPER MARKETS, INC.'s registered agent are not known to Plaintiff.

65. NYS DOS CBED's corporate record for DAN'S SUPREME SUPER MARKETS, INC. does not state the entity's primary location name and address.

66. NYS DOS CBED record for DAN'S SUPREME SUPER MARKETS, INC. states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is Dan's Supreme Super Markets, Inc., 474 Fulton Avenue, Hempstead, NY 11550.

67. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that the Commercial Lot, on which Key Food and the adjacent parking lot are located, are owned by RIVERDALE CENTER NY LLC.

68. RIVERDALE CENTER NY LLC at all relevant times was, and currently is, the owner of the Commercial Lot in the Bronx County on which the Subject Facility is located.

69. RIVERDALE CENTER NY LLC is an American for-profit limited liability company organized under the laws of New York State.

70. RIVERDALE CENTER NY LLC is licensed to conduct business in the State of New York by the NYS DOS.

71. NYS DOS maintains entity information for RIVERDALE CENTER NY LLC in its CBED.

72. NYS DOS CBED maintains a corporate record for RIVERDALE CENTER NY LLC.

73. The corporate record for RIVERDALE CENTER NY LLC does not state its chief executive officer's name and address.

74. The corporate record for RIVERDALE CENTER NY LLC does not state its principal executive office address.

75. The corporate record for RIVERDALE CENTER NY LLC does not state its registered agent's name and address.

76. The corporate record for RIVERDALE CENTER NY LLC does not state the entity's primary location name and address.

77. RIVERDALE CENTER NY LLC does not have a registered agent.

78. The name and address of RIVERDALE CENTER NY LLC's registered agent are not known to Plaintiff.

79. The corporate record for RIVERDALE CENTER NY LLC states that the post office address, to which the Secretary of State shall mail a copy of any process against the entity served upon the Secretary of State by personal delivery is the following: Riverdale Center NY LLC, 73 West 47th Street, New York, NY 10036.

80. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that RIVERDALE CENTER NY LLC is located at 73 West 47th Street, New York, NY 10036.

81. DAN'S SUPREME SUPER MARKETS, INC. signed a lease with RIVERDALE CENTER NY LLC, in accordance with which DAN'S SUPREME SUPER MARKETS, INC. is responsible for ensuring that the Parking Lot is in compliance with the 1991 ADA Standards.

82. DAN'S SUPREME SUPER MARKETS, INC. signed a lease with RIVERDALE CENTER NY LLC, in accordance with which the former is responsible for ensuring that the Parking Lot is in compliance with the 2010 ADA Standards.

83. Under that lease, DAN'S SUPREME SUPER MARKETS, INC. is responsible for ensuring that the Parking Lot complies with 28 C.F.R. §36.201.

84. Also under that lease, DAN'S SUPREME SUPER MARKETS, INC. is responsible for ensuring that the Parking Lot is in compliance with the New York State Civil Rights laws.

85. Under that lease, DAN'S SUPREME SUPER MARKETS, INC. is also responsible for ensuring that the Parking Lot complies with the New York State Human Rights laws.

86. Under that lease, DAN'S SUPREME SUPER MARKETS, INC. is responsible for ensuring that the Parking Lot complies with the New York City Human Rights laws.

87. Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, RIVERDALE CENTER NY LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the ADA.

88. Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, RIVERDALE CENTER NY LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the ADA.

89. Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, RIVERDALE CENTER NY LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Civil Rights laws.

90. Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, RIVERDALE CENTER NY LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Human Rights laws.

91. Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, RIVERDALE CENTER NY LLC, which houses the public accommodation,

cannot escape liability for its tenant's failure to comply with the New York City Human Rights laws.

92. Defendants are jointly and severally liable for the design of the Parking Lot.

93. Defendants are jointly and severally liable for the construction of the Parking Lot.

94. Defendants are jointly and severally liable for the maintenance of the Parking Lot.

95. Defendants are jointly and severally liable for the management of the Parking Lot.

96. Defendants are jointly and severally liable for the control of the Parking Lot.

97. Defendants are jointly and severally liable for the alteration of the Parking Lot.

98. Defendants are jointly and severally liable for the operation of the Parking Lot.

99. After March 15, 2012, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to the Parking Lot.

100. After March 15, 2012, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to Key Food.

101. Key Food is a retail store and is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

## STATUTORY SCHEME

102.     On July 26, 1990, Republican President George H. W. Bush, who himself subsequently became disabled and had to rely on a wheelchair later in his life, signed the ADA into law, which extended essential civil rights to individuals with disabilities.

103.     That law had been championed by Senator Robert J. Dole, who himself had suffered from a significant disability, which resulted from the wounds he has received while fighting in Italy during liberation of the world from the fascists' dictatorship during World War II.

104.     On that day, July 26, 1990, the United States of America enacted the ADA, establishing extremely important and incontrovertibly indispensable civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

105.     Congress made the following findings:

      a.  Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

      b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

      c.  Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation,

communication, recreation, institutionalization, health services, voting and access to public services;

d.  Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

106.     Furthermore, Congress also explicitly stated that the ADA had to:

a.  Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c.  Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

107.     Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

108.     Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or

fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

109.    The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

110.    ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

111.    It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

112.    Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

113.    The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

114.    The Subject Facility affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(E).

115.    The Subject Facility affects interstate commerce within the meaning of 28 C.F.R. §36.104 Place of public accommodation (5).

116.    Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

117.    Discriminatory intent is not required to establish liability under the ADA.

118.    Discriminatory intent is not required to establish liability under the New York State Civil Rights Laws.

119.    Discriminatory intent is not required to establish liability under the New York State Human Rights laws.

120.    Discriminatory intent is not required to establish liability under the New York City Human Rights laws.

121.    One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.
>
> 28 C.F.R. §36.304

122.    Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from services or accommodations at the store Key Food and Parking Lot, on the basis of their disability, 28 C.F.R. §36.304.

123.    Removal of the architectural barriers at Key Food and the Parking Lot is readily achievable by Defendants.

124.    At all relevant times herein, Defendants failed to remove architectural barriers to entry for disabled individuals present in the Parking Lot and Key Food, even though it is readily achievable to remove them.

125.    The New York City Department of Buildings ("DOB") maintains records regarding construction and alterations of buildings located in the Bronx.

126.    On or about April 27, 2016, Defendant RIVERDALE CENTER NY LLC filed an application with the NYC Department of Buildings requesting approval of construction work, which involved alteration of Key Food at a total cost of $300,000.

127.    In 2016, Defendant RIVERDALE CENTER NY LLC made alterations to Key Food.

128.    In 2016, Defendant RIVERDALE CENTER NY LLC made alterations to Key Food at a cost of approximately $300,000.

129.    Because Defendant RIVERDALE CENTER NY LLC spent approximately $300,000 on alterations of Key Food, it was required to spend 20%, i.e. $60,000, to provide a path of travel to the store that is readily accessible to the maximum extent feasible for disabled individuals.

130.     Upon information and belief, Defendant RIVERDALE CENTER NY LLC made alterations to the Parking Lot after March 14, 2012.

131.     Alterations to the building, in which Key Food is located, was completed in 2016.

132.     Because alterations to Key Food were made after April 27, 2016, i.e. after the 1991 ADA Standards were in effect, the path of travel to the store was required to be made readily accessible and brought in compliance with the 1991 Standards to the maximum extent feasible.

133.     Defendants were required to spend up to 20% of the costs of the alteration on making the path of travel from the Parking Lot to Key Food to the maximum extent feasible, so that it would be in compliance with the 1991 ADA Standards.

134.     Because alterations to Key Food were made after April 27, 2016, i.e. after the 2010 ADA Standards were in effect, the path of travel to the supermarket was required to be made readily accessible and brought in compliance with the 2010 Standards to the maximum extent feasible and brought in compliance with the 2010 Standards. Defendants were required to spend up to 20% of the costs of alterations on making the path of travel to Key Food readily accessible to the maximum extent feasible.

135.     Plaintiff is informed and believes, and therefore alleges, that construction work was performed in Key Food after March 15, 2012.

136.     Plaintiff is informed and believes, and therefore alleges, that Key Food was modified after March 15, 2012.

137.     Plaintiff is informed and believes, and therefore alleges, that Key Food has undergone alterations after March 15, 2012.

138.    Plaintiff is informed and believes, and therefore alleges, that alterations were made to the Parking Lot after March 15, 2012.

139.    "'[D]iscrimination' includes, with respect to a facility or part thereof that is altered by, on behalf [**12] of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, *a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities*, including individuals who use wheelchairs."

Roberts v. Royal Atl. Corp., 542 F3d 363, 368 [2d Cir 2008])

140.    "Where the entity is undertaking an alteration that affects or could affect usability of or *access to an area of the facility containing a primary function*, the entity shall also make the alterations in such a manner that, to *the maximum extent feasible, the path of travel* to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are *not disproportionate to the overall alterations* in terms of cost and scope (as determined under criteria established by the

Attorney General). 42 U.S.C. § 12183(a)(2) (emphasis added)."

Id.

141.    "We must therefore first determine whether a challenged facility (or part thereof) has been "altered" in "a manner that affects or could affect its usability." Id.

142.    ""If alterations have been made, a defendant "discriminates" if those altered areas – and paths of travel to altered areas that "contain a primary function" – are not made readily accessible to disabled individuals "to the maximum extent feasible."" Id.

143.    "Even in the absence of alterations, a defendant nonetheless "discriminates" if it fails to remove any existing barriers to accessibility where such removal "is readily achievable."" Id. § 12182(b)(2)(A)(iv). Roberts v. Royal Atl. Corp., 542 F3d 363, 369 [2d Cir 2008]

144.    Defendant RIVERDALE CENTER NY LLC made alterations to Key Food in 2016.

145.    Defendant DAN'S SUPREME SUPER MARKETS, INC. made alterations to Key Food in 2016.

146.    Defendant RIVERDALE CENTER NY LLC made alterations to Key Food in 2016 and did not make a path of travel to the store, including the Parking Lot, readily accessible and compliant with the 1991 ADA Standards to the maximum extent feasible by spending up to 20% of the costs of the alterations.

147.    Defendant RIVERDALE CENTER NY LLC made alterations to Key Food in 2016 and did not make a path of travel to the store, including the Parking Lot, readily accessible and compliant with the 2010 ADA Standards to the maximum extent feasible by spending up to 20% of the costs of the alterations.

148.     Upon information and belief, Defendant RIVERDALE CENTER NY LLC made alterations to the Parking Lot after March 15, 2012, and did not make the Parking Lot readily accessible and compliant with 2010 ADA Standards to the maximum extent feasible for individuals with disabilities.

149.     Defendants failed to remediate ADA violations in the Parking Lot after 2016, even when the remediations were readily achievable.

150.     After 2016, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

151.     After March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

152.     Plaintiff has been diagnosed by a physician as having suffered an ischemia. He suffered right-sided hemiparesis, which caused nerve damage, and made it difficult for him to stand and balance his body weight, which resulted in an inability to walk.

153.     Plaintiff's physician prescribed him a motorized mobility scooter.

154.     Plaintiff obtained the motorized mobility scooter and uses it for all activities requiring mobility.

155.     For Plaintiff to safely use his motorized mobility scooter, routes connecting accessible spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose danger of tipping, catching wheels, or falling.

156.    Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or
> mental impairment that substantially limits one or more of
> the major life activities of such individual…. The phrase
> *major life activities* means functions such as caring for one's
> self, performing manual tasks, walking, seeing, hearing,
> speaking, breathing, learning and working.

28 C.F.R. §36.104 (italics in original).

157.    The Parking Lot adjacent to Key Food is used by customers of Key Food.

158.    There are three accessible parking spaces in the Parking Lot.

159.    There are two access aisles in the Parking Lot.

160.    The access aisles are located between the accessible parking spaces in the Parking Lot.

161.    Plaintiff cannot walk and must use his motorized mobility scooter to enter and exit an accessible van.

162.    Plaintiff lives on Manhattan's Upper West Side.

163.    Plaintiff lived on Manhattan's Upper West Side for approximately seven years.

164.    Plaintiff visits his friends in the Bronx.

165.    Plaintiff regularly shops in the Bronx.

166.    Plaintiff visits parks and other attractions in the Bronx.

167.    Key Food is in Riverdale, the Bronx.

168.    Plaintiff lives less than ten miles away from Key Food.

169.     Plaintiff lives less than 20 minutes away from Key Food by an accessible van.

170.     Plaintiff uses his mobility scooter and travels, shops in stores and goes to restaurants in Manhattan and in other boroughs of New York City.

171.     Plaintiff uses his mobility scooter, travels, shops in stores and goes to restaurants in neighborhoods in the Bronx, including Allerton, West Bronx, Castle Hill, Riverdale, the Valley, Parkchester, East Bronx, Longwood, Pelham Bay, and Williamsbridge among others.

172.     Plaintiff uses his mobility scooter, travels, shops in stores and goes to restaurants in neighborhoods throughout the five New York City boroughs.

173.     Plaintiff often visits these neighborhoods in an accessible van.

174.     Plaintiff often visits these neighborhoods by subway.

175.     Plaintiff takes trips to and visits the Bronx, where he meets with friends as part of a social program sponsored by Montefiore Hospital's Adaptive Sports Program.

176.     Plaintiff visits the Bronx at least once per month.

177.     Plaintiff has been visiting the Bronx for over ten years.

178.     During his visits to the Bronx Plaintiff meets with friends who live in the Bronx.

179.     Plaintiff shops in the Bronx.

180.     Plaintiff dines in various neighborhoods throughout the Bronx.

181.     Plaintiff often visits Bronx parks, including the New York Botanical Gardens, the Bronx Zoo, and Van Cortlandt Park.

182.     Plaintiff has shopped in Key Food in 2024.

183.     Plaintiff has shopped in Key Food in April 2024.

184.     Plaintiff intends to continue shopping in Key Food in 2024.

185.        Plaintiff intends to continue shopping in Key Food in 2025.

186.        Plaintiff intends to continue shopping in Key Food in the future.

187.        In April, 2024, Plaintiff arranged for a trip in an accessible van and travelled in it to Key Food.

188.        In April 2024, the driver of the accessible van dropped off Plaintiff in an accessible space in the Parking Lot adjacent to Key Food.

189.        Plaintiff had difficulties navigating his motorized mobility scooter on the steep slope of an accessible space in the Parking Lot.

190.        Plaintiff had difficulties maneuvering his motorized mobility scooter on a steep access aisle of the Parking Lot.

191.        Plaintiff had difficulties maneuvering his motorized mobility scooter within an accessible space of the Parking Lot because the accessible space had a steep slope.

192.        Plaintiff had difficulties maneuvering his motorized mobility scooter within an access aisle of the Parking Lot because the aisle had a steep slope.

193.        Due to the architectural barriers he encountered in the Parking Lot, Plaintiff left it frustrated, disappointed, and humiliated.

194.        The Parking Lot was designed by Defendants, who did not have Plaintiff and his needs in mind, did not accommodate his disabilities, and did not facilitate his access to the Subject Facility.

195.        Defendants discriminated against Plaintiff by denying him a safe path of travel to Key Food from the Parking Lot.

196.     Defendants constructed the Parking Lot with disregard of the accessibility requirements of the ADA and thereby both failed to accommodate Plaintiff and his access to Key Food.

## Plaintiff Intends to Return to Key Food

197.     Key Food is in Riverdale, Bronx, NY.

198.     Key Food is within ten miles from Plaintiff's home on the Upper West side in Manhattan.

199.     Plaintiff lives less than 20 minutes away from Key Food by an accessible van.

200.     Plaintiff visits Riverdale about once every four months to dine and shop in that area.

201.     Plaintiff intends to visit and shop in Key Food in the future as soon as the architectural barriers are removed.

202.     Plaintiff intends to visit Key Food again in the future when he visits Riverdale, shop in it and enjoy its services as soon as the architectural barriers are removed.

## Plaintiff is a Tester

203.     Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting his civil rights.

204.     Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

205.     Completely independent of his personal desire to have access to Key Food free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

206.    As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

207.    Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

208.    When Plaintiff determines that barriers to access are unlawful, he initiates a legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

209.    Following completion of a legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

210.    As a tester, Plaintiff visited Key Food to encounter architectural barriers to access.

211.    As a tester, Plaintiff personally encountered the architectural barriers in the Parking Lot.

212.    Plaintiff visited Key Food, shopped in it, and encountered ADA violations in the Parking Lot.

213.    Plaintiff encountered the above-mentioned ADA violations during his visit to Key Food.

214.    Plaintiff encountered the aforementioned ADA violations in the Parking Lot.

215.    Following conclusion of this lawsuit, Plaintiff intends to return to Key Food as both a customer, who wants to shop in Key Food, and as a tester to determine whether Defendants remediated their ADA violations.

216.    Plaintiff's motivation to return to Key Food in part stems from his desire to utilize ADA litigation to make his community more accessible for him and other disabled individuals, who cannot visit it because of the architectural barriers in its Parking Lot.

217.    Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to Key Food as soon as it is accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to remediate the ADA violations in the Parking Lot.

218.    Following conclusion of this lawsuit, Plaintiff intends to visit Key Food at least twice a year to ensure that Defendants comply with the ADA and to shop in it.

219.    Plaintiff is confident that Defendants will not remediate the ADA violations in Key Food without this Court's intervention.

220.    Plaintiff is confident that Defendants will not remediate the ADA violations in the Parking Lot without the Court's intervention.

221.    Plaintiff will continue to suffer discrimination without the Court's intervention.

222.    Plaintiff will enforce the injunction once it is issued by the Court.

### Violations of Title III in the Subject Facility

223.    Due to the unlawful architectural barriers in the Parking Lot, Plaintiff did not have an accessible path of travel from it to Key Food that complied with the ADA requirements, had difficulties with shopping at the store, and suffered an injury in fact.

224.    Since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to Key Food readily accessible to the maximum extent feasible for individuals with disabilities.

225.    Since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to Key Food readily accessible to the maximum extent feasible for individuals with disabilities by spending up to 20% of the costs of alterations made to Key Food.

226.    Since January 26, 1992, Defendants failed to make certain that the Parking Lot was readily accessible to the maximum extent feasible for individuals with disabilities.

227.    Since January 26, 1992, Defendants failed to make certain that the Parking Lot complied with 2010 ADA Standards when it was readily achievable to do so.

228.    Defendants failed to bring the Parking Lot in compliance with 1991 ADA Standards when it was readily achievable to do so.

229.    Since January 26, 1992, Defendants engaged in unlawful practices in violation of the ADA.

230.    Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York State Civil laws.

231.    Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York State Human Rights laws.

232.    Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York City Human Rights laws.

233.    Since March 15, 2012, Defendants failed to make Key Food readily accessible to the maximum extent feasible for individuals with disabilities.

234.    Since March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

235.    Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA.

236.    Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Civil laws.

237.    Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Human Rights laws.

238.    Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York City Human Rights laws.

239.    Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

240.    Since April 2024, through the present time, Defendants have engaged and continue to engage in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

241.    Due to the architectural barriers which remain in the Parking Lot in violation of the ADA, Plaintiff does not have an accessible path of travel to visit and shop at Key Food that complies with the ADA requirements, and he is being discriminated against in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

242.    Plaintiff encountered architectural barriers to access Key Food, which have made it difficult for him to visit and shop at the store and caused him embarrassment, humiliation, and frustration.

243.    Because Key Food is a place of public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

244.     Because Key Food's Parking Lot is a public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

245.     Because the Subject Facility is a public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

246.     Plaintiff has encountered architectural barriers to access Key Food, which have greatly inconvenienced him.

247.     Key Food violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

248.     In 1991, ADA Standards for Accessible Design Title III Regulation 28 CFR Part 36 was published ("1991 Standards").

249.     The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

250.     Defendants are discriminating against Plaintiff, because at their Subject Facility they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations of the store by means of the

architectural barriers, the existence of which is in violation of the ADA, including, but not limited to those listed below.

251.     The Parking Lot is used by customers of Key Food.

252.     Only customers of Key Food are permitted to park in the Parking Lot that is adjacent to Key Food.

253.     There are three accessible parking spaces in the Parking Lot.

254.     There are two access aisles in the Parking Lot.

255.     The access aisles in the Parking Lot are located in between the accessible parking spaces.

256.     In this Complaint references to the "left" and "right" sides are made from a point of view of a person driving into a space.

257.     In this Complaint, the three accessible parking spaces are designated sequentially, from left to right.

258.     In this Complaint, each of the two access aisles in the Parking Lot is designated sequentially.

259.     In this Complaint, Access Aisle #1 is located immediately to the right of Accessible Parking Space #1.

260.     In this Complaint, Access Aisle #2 is located immediately to the right of Accessible Parking Space #2.

261.     "**Signage.** Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (see 4.30.7). Spaces complying with 4.1.2(5)(b) shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility. Such

signs shall be located so they cannot be obscured by a vehicle parked in the space." 1991 Standards §4.6.4*

262.     "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

263.     There is no identification sign identifying Accessible Parking Space #1 in the Parking Lot in violation of 1991 Standards §4.6.4*

264.     There is no identification sign identifying Accessible Parking Space #1 in the Parking Lot in violation of 2010 Standards §502.6.

265.     The identification sign installed in front of Accessible Parking Space #2 does not have an additional sign "Van-Accessible" mounted below the symbol of accessibility in violation of 1991 Standards §4.6.4*.

266.     The identification sign installed in front of Accessible Parking Space #2 does not contain the designation "van accessible" in violation of 2010 Standards §502.6.

267.     The identification sign installed in front of Accessible Parking Space #2 is located 33 inches above the ground surface measured to the bottom of the sign in violation of 2010 Standards §502.6.

268.     There is no identification sign identifying Accessible Parking Space #3 in the Parking Lot in violation of 1991 Standards §4.6.4*.

269.     There is no identification sign identifying Accessible Parking Space #3 in the Parking Lot in violation of 2010 Standards §502.6.

270.    There is no sign containing the designation "van accessible" in the Parking Lot in violation of 2010 Standards §502.6.

271.    "**Parking Spaces.** Accessible parking spaces shall be at least 96 in (2440 mm) wide. Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with 4.3. Two accessible parking spaces may share a common access aisle. Parked vehicle overhangs shall not reduce the clear width of an accessible route. Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 Standards §4.6.3*

272.    "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

273.    "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

274.    Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

275.    Defendants violated §4.6.3* of 1991 Standards.

276.    Defendants violated 2010 Standards §Advisory 502.4.

277.    Defendants violated §502.4 of 2010 Standards.

278.      Accessible Parking Space #1 has a running slope of 3.3%, which is equivalent to 1:30.3, in violation of 1991 Standards §4.6.3*.

279.      Accessible Parking Space #1 has a running slope of 3.3%, which is equivalent to 1:30.3, in violation of 2010 Standards §502.4.

280.      Access Aisle #1 has a running slope of 3.4%, which is equivalent to 1:29.41, in violation of 1991 Standards §4.6.3*.

281.      Access Aisle #1 has a running slope of 3.4%, which is equivalent to 1:29.41, in violation of 2010 Standards §Advisory 502.4.

282.      Access Aisle #1 has a running slope of 3.4%, which is equivalent to 1:29.41, in violation of 2010 Standards §502.4.

283.      Accessible Parking Space #2 has a running slope of 3.3%, which is equivalent to 1:30.3, in violation of 1991 Standards §4.6.3*.

284.      Accessible Parking Space #2 has a running slope of 3.3%, which is equivalent to 1:30.3, in violation of 2010 Standards §502.4.

285.      Access Aisle #2 has a running slope of 5%, which is equivalent to 1:20, in violation of 1991 Standards §4.6.3*.

286.      Access Aisle #2 has a running slope of 5%, which is equivalent to 1:20, in violation of 2010 Standards §Advisory 502.4.

287.      Access Aisle #2 has a running slope of 5%, which is equivalent to 1:20, in violation of 2010 Standards §502.4.

288.      Access Aisle #2 has a cross slope of 3.7%, which is equivalent to 1:27.03, in violation of 1991 Standards §4.6.3*.

289.    Access Aisle #2 has a cross slope of 3.7%, which is equivalent to 1:27.03, in violation of 2010 Standards §Advisory 502.4.

290.    Access Aisle #2 has a cross slope of 3.7%, which is equivalent to 1:27.03, in violation of 2010 Standards §502.4.

291.    Accessible Parking Space #3 has a running slope of 8.7%, which is equivalent to 1:11.49, in violation of 1991 Standards §4.6.3*.

292.    Accessible Parking Space #3 has a running slope of 8.7%, which is equivalent to 1:11.49, in violation of 2010 Standards §502.4.

293.    "**General**. Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1.

294.    Accessible Parking Space #3 has a ground surface that is cracked and is neither stable, nor firm, nor slip resistant, in violation of 2010 Standards §302.1.

295.    Plaintiff intends to visit Key Food again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, detailed in this Complaint, are removed. The purpose of that return visit would be to be a customer, who comes to enjoy goods and services offered at Key Food, as well as to determine whether, and when, Key Food has been made accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so that other disabled individuals would be able to enjoy Key Food in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ends.

296.    Plaintiff intends to visit Key Food again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire

whatsoever, to continue to repeatedly subject himself to Defendants' unequal treatment and blatant discrimination of him through their architectural barriers to equal access and engage in the futile gesture of attempting to patronize Key Food, a business place of public accommodation, known to Plaintiff to have numerous and continuing pervasive architectural barriers to equal access for wheelchair users, until Defendants remediate violations at Key Food.

297.     Plaintiff has traveled to Key Food as a customer, as well as an independent advocate for the disabled, encountered and/or observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible, suffered legal harm, legal injury, and legal damages, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at Key Food until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make Key Food equally accessible to all.

298.     Plaintiff will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation, Plaintiff requires an inspection of Key Food to measure and photograph architectural barriers that are in violation of the ADA to determine the areas of non-compliance with the law.

299.     The discriminatory violations described above are not an exhaustive list of Defendants' violations of the ADA and barriers to equal access to Key Food, because Plaintiff was unable to access and assess all areas of Key Food due to the architectural barriers encountered. A complete list of Key Food ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of remedial measures necessary to

remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

300.    Defendants have failed to make Key Food accessible to Plaintiff given his disabilities. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

301.    Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at Key Food in violation of 28 CFR §36.202 and §36.211.

302.    The architectural barriers, described above, have a discriminative effect on Plaintiff, as a wheelchair user, making him unable to experience the same access to the goods, services, facilities, privileges, advantages, and accommodations of Key Food as Defendants' able-bodied customers.

303.    Defendants have failed to remove architectural barriers to accessibility to Key Food in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

304.    Since March 15, 2012, Defendants have altered the Parking Lot.

305.    **New construction and alterations. (a) Design and construction.** "(1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

306.       **"(2) Exception for structural impracticability.** (i) Full compliance with the requirements of this section is not required where a public entity can demonstrate that it is structurally impracticable to meet the requirements. Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features. (ii) If full compliance with this section would be structurally impracticable, compliance with this section is required to the extent that it is not structurally impracticable. In that case, any portion of the facility that can be made accessible shall be made accessible to the extent that it is not structurally impracticable." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

307.       **"(b) Alterations.** (1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

308.       Upon information and belief, the Parking Lot was altered after March 15, 2012.

309.       Defendants failed to make Key Food readily accessible to disabled people, including those who use wheelchairs.

310.       The foregoing violations are violations of the 1991 ADAAG, and the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

311.    The removal of the physical barriers, dangerous conditions, and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

312.    It is readily achievable to remediate the ADA violations described above as the costs do not exceed the benefits.

313.    Removal of the physical barriers, dangerous conditions, and ADA violations present at Key Food is readily achievable because of the site conditions, the structural design of the store and the straightforward nature of the necessary modifications.

314.    To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

315.    Removal of the architectural barriers and dangerous conditions at Key Food is readily achievable because of the relative low cost of modifications to comply with the 1991 and 2010 ADA Standards.

316.    Defendants have financial resources to make the modifications, including the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

317.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not readily accessible for individuals with disabilities in violation of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

318.    For Defendants, it was structurally practicable to meet the requirements of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

319.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not readily accessible for individuals with disabilities in violation of 2010 ADA Standards.

320.    For Defendants, it was structurally practicable to meet the requirements of 2010 ADA Standards.

321.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not in compliance with the accessibility standards of Title III of 1991.

322.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not constructed in a manner that complied with the accessibility standards of Title III of 1991.

323.    At the time of Plaintiff's visit to Key Food, the Parking Lot had undergone alterations and yet was not in compliance with the accessibility standards of Title III of 1991.

324.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not maintained to be in compliance with the accessibility standards of Title III of 1991.

325.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not in compliance with 2010 ADA Standards.

326.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not constructed in a manner that complied with 2010 ADA Standards.

327.    At the time of Plaintiff's visit to Key Food, the Parking Lot had undergone alterations but was not in compliance with 2010 ADA Standards.

328.    At the time of Plaintiff's visit to Key Food, the Parking Lot was not maintained in a manner that complied with 2010 ADA Standards.

329.    By continuing to maintain and/or operate the Parking Lot with discriminatory conditions in violation of the ADA, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive him of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

330.    Defendants are required to remove existing architectural barriers to the disabled when such removal is readily achievable for its places of public accommodation that have existed prior to January 26, 1992. 28 CFR 36.304(a).

331.    As there has been an alteration to Defendants' place of public accommodation since January 26, 1992, they are required to ensure to the maximum extent feasible that the altered portions of the Parking Lot are readily accessible to and usable by individuals with disabilities, including people who use wheelchairs. 28 CFR 36.402.

332.    The Parking Lot was constructed after January 26, 1993, as defined in 28 CFR 36.401, and the Parking Lot and Defendants' Subject Facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

333.    To date, Defendants have failed to comply with the above mandates.

334.    Defendants failed to make the Parking Lot "readily accessible to and usable by individuals with disabilities," even though alteration to the Parking Lot was commenced after January 26, 1992, and/or after March 15, 2012, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

335.    Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

336.    Defendants violated their obligation to remove architectural barriers to let disabled Plaintiff enjoy goods and services provided by the public accommodation under their control, thus discriminating against him.

337.    Plaintiff's requested relief serves public interest.

338.    To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the 1991 and/or 2010 ADA standards, still exist in the Parking Lot and have not been remediated, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

339.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make Key Food readily accessible to persons with disabilities.

340.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make the Parking Lot readily accessible to persons with disabilities.

341.    Defendants should have removed the architectural barriers by January 26, 1992. To date, they have failed to comply with that mandate.

342.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

343.    For Defendants, it was not structurally impracticable to make the Parking Lot accessible.

344.    Removal of all architectural barriers existing at the Parking Lot was, and is, readily achievable by Defendants.

345.    Accommodations to Plaintiff and removal of the architectural barriers for individuals with disabilities at the Parking Lot by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

346.    Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facility.

347.    Defendants' failure to make the Parking Lot accessible denied Plaintiff an equal opportunity to participate in, or to benefit from, services, or accommodations, because of his disability.

348.    The effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of Key Food and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

349.    The Parking Lot is not accessible to, or readily usable by, individuals with disabilities.

350.    Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Parking Lot, to make it accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close Key Food until the required modifications are completed.

351.     Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of Key Food is legally inexcusable.

352.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

353.     The inexcusability of Defendants' actions is exacerbated by the fact that over 30 years have passed since the effective date of Title III of the ADA. During that time, they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but did not do so.

354.     By not removing the architectural barriers, which barred Plaintiff's access, inconvenienced, embarrassed, and humiliated him, Defendants gave a crystal-clear message to Plaintiff that his patronage is neither needed, desired, welcomed, or wanted.


**SECOND CAUSE OF ACTION**

**Violations of the New York State Human Rights Laws**

355.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

356.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any
> person, being the owner, lessee, proprietor, manager,

superintendent, agent or employee of any place of public

accommodation … because of the … disability … of any

person, directly or indirectly, to refuse, withhold from or

deny to such person any of the accommodations, advantages,

facilities or privileges thereof … to the effect that any of the

accommodations, advantages, facilities and privileges of any

such place shall be refused, withheld from or denied to any

person on account of … disability … .

NYS Executive Law §296(2)(a)

357.    The Subject Facility is a place of public accommodation, as defined in New York

State Human Rights Law §292(9).

358.    Defendants have further violated the New York State Human Rights Law by being

in violation of the rights provided under the ADA.

359.    Defendants are in violation of the New York State Human Rights Law by denying

Plaintiff full and safe access to the benefits, accommodations, and services of the Subject

Facility.

360.    Defendants do not provide Plaintiff with equal opportunity to use their public

accommodation.

361.    Defendants have failed to make all readily achievable accommodations and

modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

362.    Defendants have not provided Plaintiff with evenhanded treatment in violation of

New York State Human Rights Law §296.

363.    Defendants' unequal treatment of Plaintiff was demonstrated when he was discriminated against.

364.    Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodations.

365.    Defendants have demonstrated that Plaintiff's patronage is unwelcome, unwanted, undesirable, unacceptable, and objectionable.

366.    In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff.

367.    Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).


### THIRD CAUSE OF ACTION

**Violations of the New York State Civil Rights Laws**

368.    Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

369.    Defendants have violated Plaintiff's civil rights because of his disability.

370.    Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

371.    Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

372.    A copy of this Complaint is being served upon the attorney general by the United States mail, first class mail, postage prepaid.

## **FOURTH CAUSE OF ACTION**

### **Violations of the New York City Human Rights Law**

373.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth

in this complaint, as if fully set forth herein.

374.     The New York City Human Rights Law, in relevant part, provides the below.

It shall be an unlawful discriminatory practice for any person

who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent or employee of

any place or provider of public accommodation:

1. Because of any person's actual or perceived …

disability …, directly or indirectly:

(a) to refuse, withhold from or deny to such

person the full and equal enjoyment, on equal

terms and conditions, of any of the

accommodations, advantages, services,

facilities or privileges of the place or provider

of public accommodation;

NYC Admin. Code §8-107(4)

375.     Defendants have not reasonably accommodated Plaintiff in violation of New York

City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

376.     In violation of the New York City Administrative Code, Defendants have

unlawfully discriminated against Plaintiff.

377.     Reasonable accommodations and modifications are necessary to enable Plaintiff to enjoy non-restricted access and use of Defendants' Subject Facility.

378.     In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Subject Facility have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

379.     In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that Plaintiff's patronage is unwelcome, objectionable and not acceptable.

380.     Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

381.     Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

382.     A copy of this Complaint is being served upon the New York City Commission on Human Rights by United States mail, first class mail, postage prepaid.

383.     Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York City Human Rights Law, NYC Admin. Code §8-125.

## **ATTORNEY'S FEES AND COSTS**

384.    Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28 C.F.R. §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.
>
> NYC Admin. Code §8-502(g)

## COMPENSATORY AND STATUTORY MONETARY DAMAGES

385.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

> Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

386.    Plaintiff requests statutory monetary damages in the sum of $500 from Defendants to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be

recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. …  [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….

<u>Shalto v. Bay of Bengal Kabob Corp.</u>, 2013 WL 867429

387.    The reason Plaintiff requests $500 from Defendants, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this Complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here, and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

## **INJUNCTIVE RELIEF**

388.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law, and close the Subject Facility until requisite modifications are completed.

389.    Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination.

390.     Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adopt relief ordered in <u>Shariff v. Alsaydi</u>, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides him with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this Complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

391.     Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff would not be subject to further unlawful discrimination.

## **DECLARATORY RELIEF**

392.     Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from the Subject Facility by Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.    Grant a permanent injunction

    i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

    ii.)  Requiring Defendants to alter their Subject Facility to make it readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

    iii.)  Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

    iv.)  Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

    v.)  Ordering Defendants to make the Subject Facility readily accessible to and usable by Plaintiff and other individuals with disabilities.

    vi.)  Ordering the issuance of an injunction that requires Defendants

        i.  to prepare architectural plans remedying the ADA violations described in the Complaint, and

ii. to provide Plaintiff's counsel with those plans for review within 60 days of the Court's Order.

vii.) Ordering that the injunction affords Plaintiff 30 days to file a motion seeking relief on the basis that Defendants' proposed architectural plans are inadequate to remedy the ADA violations specified in the Complaint; and

viii.) Ordering that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement or a ruling by the Court that the plans are adequate.

B. Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C. Enter declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D. Enter an order requiring Defendants to alter their Subject Facility and amenities to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E. Hold Defendants liable for $500 in statutory monetary damages for their violations and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

F.   Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.   Retain its jurisdiction over Defendants until their unlawful practices, acts, and omissions no longer exist;

H.   Find that Plaintiff is a prevailing party in this litigation.

I.   Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.   Award such other and further relief as it deems necessary, just, and proper.


## <u>JURY DEMANDED</u>

Plaintiff demands a trial by jury of all the issues of fact and damages.


July 21, 2024

Respectfully submitted,

<u>s:/Daniel Berke</u>
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on July 21, 2024, I filed the foregoing Complaint with the Court via CM/ECF, which caused notice to be served upon all e-filing attorneys of record. In addition, I also mailed copies of the foregoing Complaint by the United States mail, first class mail, postage prepaid, to the Civil Rights Bureau and the New York City Commission on Human Rights at the following addresses: Civil Rights Bureau, 28 Liberty Street, New York, NY 10005; and Damion K. L. Stodola, General Counsel, NYC Commission on Human Rights, 22 Reade Street, 2nd Floor, New York, NY 10007.

July 21, 2024

Respectfully submitted,

s:/Daniel Berke
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*